**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Cincinnati Holding Company, LLC,

     Plaintiff,

          v.                    Case No. 1:17cv105

Fireman's Fund Insurance Company,       Judge Michael R. Barrett

     Defendant.

<u>**OPINION & ORDER**</u>

This matter is before the Court upon Defendant Fireman's Fund Insurance Company's Motion for Summary Judgment (Doc. 15) and Plaintiff Cincinnati Holding Company, LLC's Partial Motion for Summary Judgment (Doc. 16). Also before the Court is Plaintiff's Notice of Objections and Motion to Strike Unauthenticated and Inadmissible Exhibits Referenced in Defendant's Motion for Summary Judgment (Doc. 20) and Plaintiff's Motion to Exclude Testimony of Defendant's Expert (Doc. 21). These motions have been fully briefed. (Docs.19, 22, 25, 26, 29).

## I. <u>BACKGROUND</u>

Defendant Fireman's Fund Insurance Company issued two "All-Risks" insurance policies (S-66-DXX-80931530 and S-66-DXX-80945171) (the "Policies") to Plaintiff Cincinnati Holding Company, LLC. The Policies covered "all risks of direct physical loss or damage, except as excluded or limited elsewhere in this Coverage Section . . . ." (Doc. 3-1, PAGEID# 242). The insured property was a space (the "Bigg's Space") formerly used as a grocery store within a shopping mall (the "Mall") owned by Plaintiff. Plaintiff seeks coverage under the Policies for loss or damage to the Bigg's Space when third-

parties engaged in demolition, invasive testing, and deconstructive work. (Doc. 1-1, Compl. ¶ 10, PageID #7).

In June of 2012, Plaintiff entered into a contract to sell the Bigg's Space to Nantucket Promotions, LLC. (Doc. 16-1, Alex Demetriades Decl., ¶ 7). Nantucket intended to convert the Bigg's Space into a hockey sports facility which would be known as the Cincinnati Sports Zone. (Id.) When Nantucket failed to close on the Bigg's Space, a new entity, KJR Promotions, LLC—which was comprised of two of the Nantucket investors—entered into a new purchase agreement with Plaintiff for the Bigg's Space. (Id., ¶ 9). However, KJR also failed to close on the Bigg's Space. (Id., ¶ 10).

Plaintiff later discovered that the Bigg's Space had been extensively damaged. (Id., ¶ 16). After conducting an investigation, Plaintiff determined that Nantucket and KJR had caused the damage. (Id., ¶ 17). Plaintiff filed claims against Nantucket and KJR in the Hamilton County Court of Common Pleas. *See Cincinnati Holding Co., LLC v. Nantucket Promotions, LLC, et al.*, Case No. A1603310, Court of Common Pleas for Hamilton County, Ohio. Nantucket and KJR denied liability and argued that they believed they had authorization to conduct demolition work. (Demetriades Decl., ¶ 22). However, Plaintiff's claims against Nantucket and KJR were settled. (Demetriades Decl. at ¶ 22).

Plaintiff made a claim for coverage under the Policies. (Id., ¶ 23). By letter dated November 17, 2016, Fireman's Fund denied coverage for CHC's claim. (Doc. 16-5). Plaintiff brings claims against Defendant for breach of contract and declaratory judgment regarding coverage.

Defendant moves for summary judgment on Plaintiff's claims. Plaintiff moves for

partial summary judgment on the issue of liability.

## II. ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The moving party has the burden of showing an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). These standards upon which the court evaluates motions for summary judgment do not change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### B. Motion to Strike Exhibits 4, 5, 6, 7 and 8

Plaintiff seeks to strike Exhibits 4, 5, 6, 7 and 8 to Defendant's Motion for Summary Judgment. Plaintiff maintains that these exhibits are unauthenticated and constitute inadmissible hearsay.

Federal Rule of Civil Procedure 56(c) permits a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, as one district court has explained:

> following the amendment to Rule 56 in 2010, no "unequivocal requirement [exists] that documents submitted in support of a summary judgment motion must be authenticated." *Abbott v. Elwood Staffing Servs., Inc.*, 44 F.Supp.3d 1125, 1134 (N.D. Ala. 2014) (discussing *Alexander v.*

> *CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009)).   The proponent of the
> challenged evidence may cite to materials in the record (*e.g.*, depositions,
> documents, electronically stored information, affidavits, or declarations) that
> will satisfy such objection, and only if the evidence cannot be presented in
> an admissible form, despite reference to such other matters in evidence,
> will it be subject to exclusion.   *Id.* at 1134 (citing Fed. R. Civ. P. 56, advisory
> committee's note).

*Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 226 F. Supp. 3d 828, 844 (W.D. Ky. 2016).   Therefore, at the summary judgment stage, the question is not whether the documents have already been authenticated, but whether they can be presented in a form that is admissible at trial.

Defendant maintains that Exhibits 4 and 5 are public records and therefore, at the time of trial will be presented along with the testimony of either a records custodian for the Planning Commission in accordance with Federal Rule of Evidence 901(a)(7); or will be presented as certified copies so that the records will be self-authenticating under Federal Rule of Evidence 902(4).   Plaintiff does not appear to dispute this point, but instead argues that the Planning Commission Application in Exhibit 4 (Doc. 15-5) and the minutes of the Planning Commission's meeting in Exhibit 5 (Doc. 15-6) are hearsay.

Defendant responds that the statements in Exhibit 4 are not hearsay because they are not being offered for the truth of the matter, but are instead intended to provide the Court with the timeline and background of the planned conversion of the Bigg's space. As to Exhibit 5, Defendant argues that the identity of who attended the meeting and whether they spoke at the meeting is not hearsay.

Under the Federal Rules of Evidence, hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."   Fed. R.

Evid. 801(c).   The Court agrees that the Planning Commission Application in Exhibit 4 is only referenced in Defendant's Motion for Summary Judgment for purposes of providing background information.   (See Doc. 15, PAGEID# 789).   Therefore, when used in that context, Exhibit 4 is not hearsay and will not be excluded from consideration.

As to the minutes of the Planning Commission meeting in Exhibit 5, Defendant relies on the presence of Karla Ellsworth, the then-General Manager of the Mall, to support its contention that Ellsworth was held out by Plaintiff as its representative to government officials and was acting as Plaintiff's agent.   (Doc. 15, PAGEID# 790-789, 794).   The Court finds that the presence of Ellsworth at the meeting would not be hearsay.   Therefore, Exhibit 5 will not be excluded from consideration based on hearsay.

As to the emails in Exhibits 6 and 7 and the notice of loss in Exhibit 8, Plaintiff argues that Defendant cannot properly authenticate these documents, and therefore the documents should be excluded.

To properly authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).   "The burden of proof for authentication is slight." *Gregg v. Ohio Dep't of Youth Servs.*, 661 F.Supp.2d 842, 852 (S.D.Ohio 2009).   In the context of email authentication, "the key consideration ... is not simply whether the witness on the stand was a sender or recipient of the email, but whether the testifying witness can speak to the email's unique characteristics, contents, and appearance." *United States v. Lundergan*, No. 5:18-CR-00106-GFVT, 2019 WL 4125618, at *1 (E.D. Ky. Aug. 29, 2019) (quoting *United States v. Bertram*, 259 F. Supp. 3d 638, 641 (E.D. Ky. 2017)).

Plaintiff maintains that the affidavit Defendant submitted is inadequate to

authenticate the emails in Exhibits 6 and 7 because the affiant did not author or participate in the correspondence.  Defendant responds that these documents were produced by Plaintiff in response to Defendant's discovery requests; and therefore, the documents are self-authenticating.  *See Churches of Christ in Christian Union v. Evangelical Ben. Trust*, No. 2:07-cv-1186, 2009 WL 2146095, at * 5 (S.D. Ohio Jul. 15, 2009) ("[w]here a document is produced in discovery, there is sufficient circumstantial evidence to support its authenticity at trial") (citations and internal quotation marks omitted).  However, Plaintiff explains that the bates stamps on Exhibits 6 and 7 show that the documents were originally produced by Westfield Insurance in response to a subpoena in connection with the state-court litigation Plaintiff filed against Nantucket, KJR and others.  Plaintiff states that it "produced" the emails only in the sense that it sent to Defendant the documents it had obtained in the state-court litigation.

The Court concludes that striking Exhibits 6 and 7 at this stage of the proceedings is not warranted.  There is nothing in the record which suggests that the documents are not actually authentic, and Plaintiff does not dispute that Defendant could authenticate the documents.  Therefore, the Court will consider Exhibits 6 and 7 even though the documents have not yet been authenticated.  *Accord Moore v. Baptist Mem'l Coll. of Health Scis.*, No. 08-2311 MA/P, 2010 WL 100551, at *6 (W.D. Tenn. Jan. 7, 2010) (explaining that "some courts have nevertheless considered unauthenticated documents in deciding a motion for summary judgment where the objecting party simply argued that the proponent of the documents failed to properly authenticate the documents, as opposed to challenging the authenticity of the documents.").

As to the notice of loss in Exhibit 8, Federal Rule of Evidence 902(7) provides that

a document is self-authenticating if it bears "[a]n inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control." Exhibit 8 is an email from a claim specialist sending an attached "Property Loss Notice" form to Defendant for the loss claimed by Plaintiff. The documents include the logo of the insurance agency. Presumably, Defendant would also be able to present testimony at trial to authenticate the email and attached notice. *See* Fed.R.Evid. 901(b)(1). Therefore, the Court concludes that striking Exhibit 8 is not warranted based on authenticity.

Plaintiff maintains that even if Exhibits 6, 7 and 8 could be authenticated, the email content and the notice of loss are hearsay. Defendant relies on the emails in Exhibits 6 and 7 to prove that Plaintiff authorized Nantucket and/or KJR to begin demolition of the Bigg's Space. (See Doc. 15, PAGEID# 792). Defendant argues that the emails were sent or received by Ellsworth and David Blessing, Esq., Plaintiff's attorney, and therefore the content is not hearsay as an opposing party's statement pursuant to Federal Rule of Evidence 801(d)(2). Defendant also argues that the emails are business records pursuant to Federal Rule of Evidence 803(6).

Under Rule 801(d)(2)(D) of the Federal Rules of Evidence, a statement is not hearsay if it is "offered against an opposing party and ... was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." To determine if the statement to be admissible, "[t]he crucial question is whether there is evidence that the unidentified declarants were speaking on a matter within the scope of their employment." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012).

Plaintiff points out that Exhibit 7 is an email from Nick Poe, who is not an agent or

employee of Plaintiff, but was instead managing partner of Nantucket. Accordingly, the statements in the email sent by Poe in Exhibit 7 are not admissible under Rule 801(d)(2)(D).

Plaintiff explains that the statements made by Karla Ellsworth in the email in Exhibit 6 are also not admissible under Rule 801(d)(2)(D) because Elllsworth was an independent contractor. As one district court has noted, "employment status as an independent contractor does not necessarily preclude [an employee] from the concomitant role of agent." *Howard v. Abdellatif*, No. 2:05-CV-81, 2008 WL 5411775, at *4 (W.D. Mich. Dec. 23, 2008). However, Plaintiff has also presented the Declaration of Alex Demetriades, who is Plaintiff's sole member or owner. (Doc. 16-1, Demetriades Decl., ¶ 3). In his Declaration, Demetriades states that Ellsworth did not have authority to permit Nantucket or KJR to begin demolition work. (Demetriades Decl., ¶ 27). Therefore, to the extent that Ellsworth's statements in the email in Exhibit 6 can be read to support the argument that Plaintiff approved demolition work by Nantucket or KJR, those statements were not within the scope of Ellsworth's relationship with Plaintiff. Accordingly, the statements in Exhibit 6 cannot be admitted under Rule 801(d)(2)(D).

With regard to the business record exception, the Sixth Circuit has explained:

Pursuant to Federal Rule of Evidence 803(6), a business record must have been: (a) made at or near the time by, or from information transmitted by, a person with knowledge; (b) kept in the course of a regularly conducted business activity; and (c) made as part of a regular practice of the business. *See* Fed. R. Evid. 803(6). Moreover, all of these conditions must be shown by the testimony of a qualified witness. *Id.*

An email is not a business record for purposes of the relevant hearsay exception simply because it was sent between two employees in a company or because employees regularly conduct business through emails; such evidence alone is insufficient to show that the email is a record, made as "a regular practice" of the company, Fed. R. Evid. 803(6)(C), and that "the

record was kept in the course of a regularly conducted activity of a business," *id.* at 803(6)(B). "[I]t would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then ergo all those e-mails are business records falling with the ambit of Rule 803(6)(B)." *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013). If that were the case, then every single email sent within any company would fall within the exception. This result would obviate the entire purpose of the business records exception, which is designed for a limited category of records—namely those that are regularly produced as a part of a company's business activities.

Of course, an email can qualify as an admissible record of a regularly conducted business activity as long as the proponent satisfies the requirements of Rule 803(6).

*United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019). Here, there is nothing in the record which would demonstrate that the emails in Exhibits 6 and 7 satisfy the requirements for a business record under Rule 803(6). Therefore, Exhibits 6 and 7 are not admissible as business records.

As to Plaintiff's Loss Notice in Exhibit 8, Defendant explains that the document is not hearsay because it is not being offered to prove the truth of the matter asserted, but rather when Plaintiff gave Defendant notice of its claim. The Court concludes that in this context, the Loss Notice in Exhibit 8 is not hearsay, and therefore Exhibit 8 will be considered.

Therefore, Plaintiff's Notice of Objections and Motion to Strike Unauthenticated and Inadmissible Exhibits Referenced in Defendant's Motion for Summary Judgment is DENIED in PART and GRANTED in PART.

### C. <u>Motion to Exclude Testimony of Defendant's Expert</u>

Plaintiff seeks to exclude the testimony of Defendant's Expert, Michal A. Collins, Jr. who is a damages expert. Plaintiff explains that Collins was not identified as an expert by Defendant until the eve of the deadline for discovery and dispositive motions. Plaintiff

explains that on multiple occasions during the discovery period, counsel inquired whether Defendant would be relying upon a damages expert, but Defendant did not respond to the inquiry.  Plaintiff argues that it is prejudiced by the untimely disclosure of Collins' report because Plaintiff had been proceeding based on the understanding that Defendant would not be challenging Plaintiff's calculation of damages with its own expert; and would instead focus only on the issue of liability.  In response, Defendant explains that its counsel experienced significant family medical emergencies during this period of time, and the drastic remedy of excluding Defendant's expert is not warranted in this situation. Plaintiff replies that it is sympathetic to counsel's personal issues, but notes that Collins' report was dated September 16, 2017, but was not produced until May 1, 2019.

Under Federal Rule of Civil Procedure 26(a)(2), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  If a party fails to comply with this rule, Federal Rule 37 provides that the party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "The advisory committee's note to Rule 37(c) 'strongly suggests that "harmless" involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party."  *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 U.S. App. LEXIS 14943, at *16-*17, 1999 WL 455435 (6th Cir. June 25, 1999)).

The Court finds that Defendant's failure to timely make those disclosures was neither substantially justified nor harmless under Rule 37(c)(1).  Defendant does not explain when it retained Collins, but as Plaintiff points out, Collins' report is dated

September 16, 2017. In addition, there is no indication that Plaintiff had sufficient knowledge of Defendant's damages expert because when Plaintiff specifically asked as to whether Defendant would be relying upon such an expert, Defendant did not respond. Moreover, even though there would be time for Plaintiff to depose Collins before trial, "allowing parties to obviate the need to provide Rule 26(a)(2) disclosures and reports by simply making their experts available to be deposed would render the Rule meaningless." *Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 454 (E.D. Mich. 2017) (quoting *Rangel v. Anderson*, 202 F.Supp.3d 1361, 1367 (S.D. Ga. 2016), objections overruled, No. CV 215-81, 2016 WL 6542717 (S.D. Ga. Nov. 3, 2016)).

Therefore, Plaintiff's Motion to Exclude Testimony of Defendant's Expert is GRANTED.

### D. <u>Breach of insurance contract</u>

The parties do not appear to dispute that Ohio law governs interpretation of the insurance contracts at issue here. Under Ohio law, "interpretations of insurance contracts are questions of law for a court to answer." *Constr. Contractors Employer Grp., LLC v. Fed. Ins. Co.*, 829 F.3d 449, 453 (6th Cir. 2016).

The two insurance policies which form the basis of Plaintiff's claims are "all-risk insurance policies." As the Sixth Circuit has explained:

> Unlike a named peril insurance policy, an all-risk insurance policy extends coverage "to risks that are not ordinarily included in other types of insurance coverage." *Essex House v. St. Paul Fire & Marine Ins. Co.*, 404 F.Supp. 978, 987 (S.D. Ohio.1975). However, not all property risks are covered by such a policy. *Essex House*, 404 F.Supp. at 987; *see also Aetna Casualty & Sur. Co. v. Yates*, 344 F.2d 939, 940 (5th Cir.1965) (calling the term "all-risk" a misnomer). An all-risk policy does not cover risks that are either specifically excluded from coverage by a provision in the policy or losses that occur as a result of the insured's fraud or other misconduct. *Essex House*, 404 F.Supp. at 993; *C.H. Leavell & Co. v. Fireman's Fund Ins. Co.*,

372 F.2d 784, 787 (9th Cir.1967). In addition, an all-risk policy, like any other insurance policy, insures only against fortuitous losses. *Essex House*, 404 F.Supp. at 987; *Compagnie Des Bauxites De Guinee v. Insurance Co. of N. Am.*, 554 F.Supp. 1075, 1080 (W.D. Pa.1983), *rev'd on different grounds*, 724 F.2d 369 (3d Cir.1983).

*University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995). Therefore, Plaintiff is required to present evidence (1) that it sustained a physical loss and (2) that the loss was the result of a fortuitous event. *See id.* (citing *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 703 F.Supp. 1313, 1317 (N.D. Ill.1988), *aff'd*, 915 F.2d 316 (7th Cir.1990)).

The parties do not dispute that there was a physical loss, but instead center their arguments as to whether the loss was fortuitous. The Sixth Circuit has explained that "the courts generally do not recognize deliberate actions that produce predictable and anticipated damages as fortuitous events under all-risk insurance policies." *Id.* at 1281-82 (citing *New York State Elec. & Gas Corp. v. Lexington Ins. Co.*, 204 A.D.2d 226, 612 N.Y.S.2d 43, 43 (1994) (finding that plaintiff's deliberate removal of a component from its generating plant, which resulted in expected downtime, was not a fortuitous event under an all-risk insurance policy); *Great Northern Ins. Co. v. Dayco Corp.*, 620 F.Supp. 346, 351 (S.D.N.Y.1985) (noting that all-risk insurance protects the insured against "unexplained" losses)).

Defendant argues that any loss was not fortuitous because Plaintiff authorized Nantucket and/or KJR to begin demolition of the Bigg's Space. Defendant relies upon the statements of Ellsworth and Blessing contained in Exhibit 6. Defendant maintains that Ellsworth and Blessing were acting as Plaintiff's agents and authorized the demolition work to begin. However, the Court has found that Exhibit 6 is not admissible for purposes

of deciding summary judgment. Plaintiff counters that it never intended nor expected the damage caused by Nantucket and/or KJR because neither had approval nor authority to demolish any part of the Property. Plaintiff explains the purchase agreements specifically preclude invasive testing and any modifications to the purchase agreements were required to be made in writing.

The Court concludes that at this stage of the proceedings there is a genuine issue of material fact as to whether the loss claimed by Plaintiff was the result of a fortuitous event. The two purchase agreements Plaintiff signed with Nantucket and KJR both included the same provision which gave Nantucket and KJR limited rights of entry to perform certain testing:

> Purchaser and its agents, employees and contractors may enter the Property for purposes of inspection and survey and conducting soils, engineering and Hazardous Substances tests and such other test as Purchaser, in its discretion, deems necessary, provided that no invasive testing, including, without limitation, borings or other similar procedures may be made without Seller's prior written approval. Purchaser shall repair any property damage arising from such entry by Purchaser or from the performance of any such tests by Purchaser, except that Purchaser's agreements as set forth in this sentence shall not extend to any condition that is discovered by Purchaser to be present on, under or about the Property, Purchaser shall indemnify Seller and hold Seller harmless from any property damage and any liability to third parties for personal injuries or property damage, including any reasonable attorney fees, suffered or incurred by Seller and resulting from Purchaser's exercise of its right of entry herein. Purchaser shall give reasonable prior notice of such entry to Seller.

(Doc.16-3; Doc. 16-4). Both purchase agreements also included integration clauses which required any modifications to the agreements to be in writing:

> This Agreement and the exhibits attached hereto (if any) contain the entire agreement between the Seller and the Purchaser and there are no other terms, obligations, covenants, representations, statements, or conditions, oral or otherwise, of any kind or nature whatsoever. This Agreement may be modified only by an agreement in writing between the parties hereto.

(Id.)   In his Declaration, Alex Demetriades, who is Plaintiff's sole member or owner, states that he was the only one with authority to modify the purchase agreements.   (Doc. 16-1, Demetriades Decl., ¶ 12).   However, Karla Ellsworth testified in her deposition that it was her understanding that Demetriades had consented to KJR to start demolition work and therefore she told KJR that they were given permission to start.   (Doc. 14-1, Karla Ellsworth Dep. at 93, 94).   Demetriades states that Ellsworth did not have authority to permit Nantucket or KJR to begin demolition work.   (Demetriades Decl., ¶ 27). Defendant argues that even if Ellsworth did not have actual authority, she was acting as Plaintiff's agent and had apparent authority.

The Ohio Supreme Court has explained that under Ohio law, in order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.   *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St. 3d 570, 576, 575 N.E.2d 817, 822 (1991).   The Ohio Supreme Court has explained further that:

> The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority. . . .' "

*Id.* (quoting *Logsdon v. ABCO Constr. Co.*, 103 Ohio App. 233, 241–242, 3 O.O.2d 289,

293, 141 N.E.2d 216, 223 (Ohio Ct. App. 1956). The burden of proving that apparent authority exists rests upon the party asserting the agency. *Scott v. Kindred Transitional Care & Rehab.*, 2016 WL 561756, *3 (Ohio Ct. App. Feb. 11, 2016). Defendant has presented evidence that Ellsworth was present at a Planning Commission's meeting on behalf of Plaintiff where the planned conversion of the Bigg's space was discussed. (Doc. 15-6). However, Defendant has not presented specific evidence of acts or conduct by Plaintiff which would clothe Ellsworth with the appearance of the authority to permit Nantucket or KJR to begin demolition work. Because there is a genuine issue as to Ellsworth's authority to act on behalf of Plaintiff, the Court finds that summary judgment is not warranted at this time.

Defendant argues that even if the loss was fortuitous, coverage is nonetheless precluded by certain exclusions in the policies. When an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion. *Continental Ins. Co. v. Louis Marx & Co., Inc.*, 64 Ohio St.2d 399, 18 O.O.3d 539, 415 N.E.2d 315, 401 (Ohio 1980). Furthermore, "an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded." *Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St. 3d 186, 187, 846 N.E.2d 833, 836 (Ohio 2006).

Defendant first relies on Exclusion 2.d of the Policies (Appx. A), which excludes: "Dishonest or criminal acts by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose . . ." Plaintiff states that although Nantucket and/or KJR clearly exceeded the scope of the permission granted to them by the purchase agreements, this does not necessarily mean

that they committed criminal or dishonest acts. As proof that the acts committed by Nantucket and/or KJR were criminal or dishonest, Defendant relies on allegations Plaintiff made in its complaint filed against Nantucket and KJR in the Hamilton County Court of Common Pleas.

In the complaint against Nantucket and KJR, Plaintiff alleged that Nantucket and KJR committed civil theft. (Doc. 15-4, PAGEID #997-998). However, the Sixth Circuit has expressed reluctance for treating counsel's statements dealing with opinions and legal conclusions as binding judicial admissions. *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997); *see also United States v. Atlas Lederer Co.*, No. 3:91CV309, 2012 WL 89976, at *4 (S.D. Ohio Jan. 11, 2012) (declining to find that answering interrogatories and/or submitting an affidavit constitutes a judicial admission).

Defendant relies on *Bita Trading, Inc. v. Nationwide Mut. Ins. Co.*, No. 13CV1548, 2015 WL 433557, at *5 (S.D. Cal. Feb. 3, 2015), *aff'd*, 675 F. App'x 692 (9th Cir. 2017), in which the court found that an insurance contract theft exclusion applied even if the actor is unknown and criminal intent not shown. However, the court in *Bita Trading* was specifically relying on California law. Because Defendant has not cited similar legal principals under Ohio law, the Court finds that the applicability of this exclusion hinges on the issue of whether a dishonest or criminal act occurred. Plaintiff's claims against Nantucket and KJR were resolved in settlement, and there was no finding of civil theft against Nantucket or KJR. There is no evidence in the record demonstrating that the acts of Nantucket or KJR were criminal or dishonest. Therefore, there is a genuine issue of material fact as to whether Exclusion 2.d of the Policies applies.

Next, Defendant relies on Exclusion 3.h of the Policies (Appx. A), which excludes

coverage for damage caused by "acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body."[1]  Defendant maintains that this exclusion applies because Plaintiff is seeking coverage for loss, damage or expense caused by or resulting from the acts or decisions of Nantucket or KJR to begin demolition. Defendant explains that exclusion contemplates that the insured—Plaintiff—would be able to recover in tort from Nantucket or KJR—who are the "person[s], group[s], [or] organization[s]" who caused the damage.  Plaintiff responds that this exclusion is so broad that it is routinely set aside by courts interpreting the exclusion.

Under Ohio law, if an exclusion is ambiguous, it is construed in favor of affording coverage to the insured.  *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, Pa., 691 F.3d 821, 832 (6th Cir. 2012) (applying Ohio law).

Some courts have found this "acts or decisions" exclusion to be ambiguous and concluded that coverage was not excluded.  As one court explained, if the exclusion were to be taken literally, "it would exclude coverage from all acts and decisions of any character of all persons, groups, or entities. Such an interpretation would leave the insurance policy practically worthless."  *Jussim v. Massachusetts Bay Ins. Co.*, 33 Mass. App. Ct. 235, 238–39, 597 N.E.2d 1379, 1382 (1992), *aff'd as amended*, 415 Mass. 24, 610 N.E.2d 954 (1993).   To illustrate, another court explained:

---

[1]The full language of the exclusion provides:

3. This Coverage Section does not insure against loss, damage or expense caused by or resulting from the following. But if loss or damage from a covered cause of loss results, we will pay for that resulting loss or damage.

 . . .

h. Acts or decisions, including the failure to act or decide, of any person, group, organization, or governmental body; . . .

> Under St. Paul's reading of the provision, any time a human or an organization of humans had any role in a loss, no matter how tangential, the policy would exclude coverage. Presumably, the "any act or decision" provision, under St. Paul's analysis, would still provide coverage for an act of God, such as a fire caused by a bolt of lighting. However, St. Paul could still argue that a fire caused by lightening should be excluded because the fire department, a unit of government, failed to "act appropriately" or "respond appropriately" when alerted to the fire. Given the amorphous and expansive language in the provision, the court finds that it does not speak with the clarity required for it to effectively exclude the loss of the vaccines.

*St. Paul Fire & Marine Ins. Co. v. Gen. Injectables & Vaccines, Inc.*, No. CIV.A.98-07370R, 2000 WL 270954, at *5, n.5 (W.D. Va. Mar. 3, 2000); *see also Mettler v. Safeco Ins. Co. of Am.*, No. C12-5163 RJB, 2013 WL 231111, at *6 (W.D. Wash. Jan. 22, 2013) (same); *but see Landmark Hosp., LLC v. Cont'l Cas., Co.*, No. CV 01-0691, 2002 WL 34404929, at *2 (C.D. Cal. July 2, 2002) (concluding the "acts or decisions" exclusion is unambiguous and holding that "[t]his exclusion provision excuses Defendant from providing coverage for damages caused by Plaintiff's negligence" if it is later determined that "Plaintiff's acts are the predominate cause of the damages.").

In addition, Plaintiff points out that the Policies contain a "Control of Property" provision which provides that "[a]ny act or neglect of any person other than you beyond your direction or control will not affect this insurance." One court has found that when this "control of property" provision is read in conjunction with the "act or decision" exclusion, the "act or decision" exclusion may apply only if the act or decision at issue was by the insured or under the insured's direction or control. *Sentience Studio, LLC. v. Travelers Ins. Co.*, 102 F. App'x 77, 81 (9th Cir. 2004). However, a Michigan court has rejected this view, explaining: "This construction inserts language into the plain language of the exclusion, which is not permitted under Michigan law, and also impermissibly makes part of the language of the exclusion nugatory, namely the portion dealing with

'governmental bod[ies].'" *Torres Hillsdale Country Cheese, L.L.C. v. Auto-Owners Ins. Co.*, No. 308824, 2013 WL 5450284, at *4 (Mich. Ct. App. Oct. 1, 2013) (citations omitted).

When read in isolation, Exclusion 3.h would seem to broadly exclude coverage for any damage caused by "acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." However, Exclusion 3.h also states: "But if loss or damage from a covered cause of loss results, we will pay for that resulting loss or damage." Furthermore, the "Control of Property" would appear to limit the "acts or decisions" in Exclusion 3.h to those made by the insured or someone under the direction or control of the insured. To the extent the language in Exclusion 3.h is ambiguous, the Court must construe it strictly against Defendant. *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 818 (6th Cir.1999). Here, it would appear that the "act or decision" clause of Exclusion 3.h does not apply to a "covered cause of loss." This seems somewhat obvious because Defendant would not be obligated to pay for damage caused by "acts or decisions" if those "acts or decisions" result in loss or damage which is not from a covered cause of loss. However, Defendant has not provided an explanation as to why this language is not to be interpreted in this manner. Therefore, because there is a genuine issue of material fact as to whether the cause of the loss is a covered cause of loss, summary judgment on the applicability of Exclusion 3.h of the Policies is not warranted at this time.

Defendant also relies on Exclusion 3.i(2) of the Policies which excludes coverage for "[f]aulty, inadequate or defective . . . Design specifications, workmanship, repair, construction, renovation, remodeling, grading compaction." Plaintiff explains that this exclusion does not apply because the demolition work done by Nantucket and KJR was

not "faulty, inadequate or defective," but was instead unauthorized.   Plaintiff again relies on the "Control of Property" provision which states that "[a]ny act or neglect of any person other than you beyond your direction or control will not affect this insurance."

There is no specific evidence in the record that Plaintiff directed Nantucket and KJR to provide design specifications, workmanship, repair, construction, renovation, remodeling or grading compaction.   Because at this stage of the proceedings there is a genuine issue of material fact as to whether Ellsworth had authority to permit Nantucket or KJR to begin demolition work, summary judgment on the applicability of Exclusion 3.i(2) of the Policies is not warranted.

Accordingly, summary judgment is denied to both parties on Plaintiff's breach of contract claim.

### E.  Declaratory judgment

There are genuine issues of material fact regarding coverage in this case. Accordingly, summary judgment is denied to both parties on Plaintiff's declaratory judgment claim.

### III. CONCLUSION

Based the foregoing, it is hereby **ORDERED** that:

1. Defendant Fireman's Fund Insurance Company's Motion for Summary Judgment (Doc. 15) is **DENIED**;

2. Plaintiff Cincinnati Holding Company, LLC's Partial Motion for Summary Judgment (Doc. 16) is **DENIED**;

3. Plaintiff's Notice of Objections and Motion to Strike Unauthenticated and Inadmissible Exhibits Referenced in Defendant's Motion for Summary Judgment (Doc. 20) is **DENIED in PART** and **GRANTED in PART**; and

4. Plaintiff's Motion to Exclude Testimony of Defendant's Expert (Doc. 21) is

**GRANTED**.

**IT IS SO ORDERED.**

      */s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge